**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Raymond P. Moore**

Civil Action No. 18-cv-03259-RM
(Bankruptcy No. 17-16354-TBM)
(Adversary Proceeding No. 18-01265-TBM)

IN RE:
DAVID LEE SMITH, and
MARY JULIA HOOK,

      Debtors.

---

DAVID LEE SMITH, and
MARY JULIA HOOK,

      Appellants,

v.

DENNIS W. KING, Chapter 7 Trustee, and
COLORADO DEPARTMENT OF REVENUE,

      Appellees.

---

## ORDER

---

      This matter is before the Court on Appellants Smith and Hook's appeal of the following

orders issued by the Bankruptcy Court arising from or related to their Chapter 7 bankruptcy case:

(1) "Order and Notice of Evidentiary Hearing"[1] (the "Notice") dated July 17, 2018; (2) "Minutes

of Proceedings/Minute Order"[2] (the "Minute Order") dated August 2, 2018; (3) "Order

Accepting Trustee's Report and Closing Case" (the "Closure Order") dated October 5, 2018; (4)

---

[1] ECF No. 1, pp. 4-12; Appendix, ECF No. 11-1, pp. 51-52.
  As used in this Order, the page references are to the page numbers assigned to the document by the court's
CM/ECF system and found in the upper right-hand corner of the document.
  References to cases other than this bankruptcy appeal are preceded by the case at issue, e.g., Bankruptcy Court or
B. Ct.
[2] ECF No. 11-1, p. 62.

"Order Denying Debtors' Motion to Vacate and Set Aside Order Accepting Trustee's Report and Closing Case; and Order Denying Debtors' Motion to Continue Automatic Stay Pending Disposition of Motion to Vacate" (the "Post-Closure Order") dated December 4, 2108[3]; and (5) "Order Granting the Colorado Department of Revenue's Motion to Dismiss or Abstain"[4] (the "CDOR Dismissal Order") dated February 5, 2019[5] (all five orders, collectively, the "Appealed Orders"). Essentially, as to the first four orders, Appellants appeal the Bankruptcy Court's acceptance of the Chapter 7 Trustee's Final Report and Account, discharge of the Trustee, and closure of the bankruptcy case. As to the last order, issued in Appellants' adversary proceeding against the Colorado Department of Revenue ("CDOR"), Appellants appeal the Bankruptcy Court's dismissal of their complaint against CDOR. After considering the Appealed Orders and relevant parts of the bankruptcy record, taking judicial notice of *LNV Corp. v. Hook*, No. 18-cv-00955-RM-SKC (D. Colo.) (the "Foreclosure Action"),[6] reviewing the applicable law, and being otherwise fully advised, the Court finds and orders as follows.

## I.     BACKGROUND

Appellants filed a Chapter 7 proceeding on July 11, 2017. There was, however, already a civil foreclosure action pending against Appellants at that time which is relevant to the issues here. Accordingly, the Court starts with the civil action.

In 2014, LNV Corporation ("LNV") filed the Foreclosure Action against Appellants and others, including the United States. The Foreclosure Action sought a determination of the rights and priorities of various interests related to Appellants' real property located in Denver, Colorado (the "Denver Property") and a judicial foreclosure of the Denver Property. The United

---

[3] ECF No. 11-3, pp. 175-178.
[4] ECF No. 22-8, pp. 25-34.
[5] *See* Notice of Appeal and Supplemental/Amended Notice of Appeal, ECF Nos. 1 & 21.
[6] Appellants refer to and rely on the Foreclosure Action in their papers.

States asserted it had numerous valid liens on the Denver Property. After Appellants filed for

bankruptcy in July 2017, the Foreclosure Action was administratively closed. Just days prior to

Appellants' bankruptcy filing, the Court in the Foreclosure Action ruled in favor of LNV on its

claim for judicial foreclosure on the Denver Property.[7] The action was reopened when LNV

obtained relief from the automatic stay.

Many proofs of claim were filed in the bankruptcy case. CDOR filed a proof of claim,

alleging Appellants owed state taxes. The United States filed a proof of claim, alleging

Appellants owed federal taxes. LNV also filed a proof of claim based on a promissory note and

deed of trust on the Denver Property.[8] On November 8, 2017, Appellants obtained a discharge

from personal liability on certain debts.

Meanwhile, the Foreclosure Action proceeded against Appellants and the Denver

Property. By Order dated June 21, 2018, the Court found all issues in the Foreclosure Action

resolved except for the manner and method of judicial foreclosure to be had on the Denver

Property.[9]

On June 29, 2018, the Chapter 7 Trustee ("Trustee") filed his Final Account and Report

(the "Initial Report"), to which Appellants objected. No creditor or any other person objected.

On August 2, 2018, after giving the Notice, the Bankruptcy Court held a hearing on the Initial

Report and Appellants' objection. Appellants argued the Trustee should take action on the proof

of claims filed by the United States and by LNV. Their objection was based on the same

arguments they raised against the United States and LNV in the Foreclosure Action, e.g., that the

United States had erroneously or illegally assessed or collected taxes from Appellants and that

---

[7] Foreclosure Action, ECF No. 320, p. 14, issued June 28, 2107.
[8] LNV's proof of claim was filed after Appellants' discharge.
[9] Foreclosure Action, ECF No. 404, p. 10.

LNV lacked standing to sue on the promissory note and deed of trust. At bottom, Appellants

wanted the Trustee to pursue actions against the United States and LNV but the Trustee chose to

abandon such actions to Appellants.[10] The Bankruptcy Court orally overruled Appellants'

objection, finding they lacked standing to object.[11] The Minute Order was entered that day.[12]

Thereafter, Appellants filed several adversary proceedings. As relevant here, on August

3, 2018, Appellants filed an adversary proceeding against the United States, seeking to recover

the allegedly overpaid and illegally assessed taxes.[13] On August 5, 2018, Appellants filed an

adversary proceeding against LNV.[14] And, on August 21, 2018, Appellants filed an adversary

proceeding against CDOR, which is part of this appeal.[15]

On September 4, 2018, the Trustee filed his second Final Report and Account (the

"Second Report"). No objections were filed by Appellants or anyone else. In the October 5, 2018

Closure Order, the Bankruptcy Court discharged the Trustee and closed the bankruptcy case.[16]

Thereafter, on October 17, 2018, Appellants filed "Debtors' Motion to Vacate and Set Aside

Order Accepting Trustee's Report and Closing Case; and Motion to Continue Automatic Stay

Pending Disposition of Motion to Vacate and Set Aside Order," which the Bankruptcy Court

construed as two motions – a Motion to Vacate and a Motion to Stay.[17]

In the Post-Closure Order, the Bankruptcy Court denied the Motion to Vacate, finding

---

[10] There may have been other actions which Appellants wanted the Trustee to pursue but Appellants focused on the United States and LNV. Appellants listed assets of $11 million in the form of taxes and damages allegedly owed by the United States/IRS and $1.2 million in the Denver Property in which LNV claimed an interest via a promissory note and deed of trust.
[11] B. Ct., Dkt. Nos. 61, 64, 69; ECF No. 11-3, p. 62; ECF No. 12-1 (transcript).
[12] B. Ct., Dkt. No. 83; ECF No. 1, p. 7 & No. 23-1, p. 89.
[13] ECF No. 23-1, pp. 13-14; Adversary Proceeding No. 18-1248. The Court has withdrawn the reference on that proceeding and is dismissing it concurrently with this case.
[14] ECF No. 23-1, p. 14; Adversary Proceeding No. 18-1250. The Court has withdrawn the reference on that proceeding and is dismissing it concurrently with this case.
[15] ECF No. 23-1, pp. 14-15; Adversary Proceeding No. 18-1265.
[16] B. Ct., Dkt. Nos. 75, 80; ECF No. 23-1, pp. 16-17.
[17] B. Ct., Dkt. Nos. 81, 82; ECF No. 22-6, pp. 51-61.

Appellants lacked standing and failed to state any grounds to set aside the Closure Order. The Bankruptcy Court also denied the Motion to Stay, finding Appellants failed to provide legal or factual support for relief and no stay is required as the Motion to Vacate had been resolved. Appellants' appeal to this court followed.

Meanwhile, CDOR moved to dismiss Appellants' complaint in the adversary proceeding. By order dated February 5, 2019, the Bankruptcy Court granted CDOR's motion, finding it lacked subject matter jurisdiction based on Appellants' lack of standing to sue and mootness. The Bankruptcy Court also found that even if it did have subject matter jurisdiction, Appellants failed to plausibly allege any claim for relief. Appellants' appeal of the dismissal to this court followed via an amendment of the appeal over the Bankruptcy Court's Chapter 7 orders (collectively, the "Bankruptcy Appeal").[18]

In this Bankruptcy Appeal, Appellants filed an emergency motion to enjoin the sale of the Denver Property pending appeal. Appellants' emergency motion sought to enjoin the sale of the Denver Property authorized by the Order of Foreclosure and Judicial Sale (the "Foreclosure Order") entered by this Court in the Foreclosure Action. This Court denied the emergency motion, which the Tenth Circuit affirmed on appeal. *See In re Hook*, 816 F. App'x 269 (10th Cir. 2020).

While the bankruptcy case was proceeding, the Court found in favor of LNV and against Appellants, and allowed LNV to foreclose on the Denver Property in the Foreclosure Action. The Denver Property has since been sold and its sale confirmed. Appellant Hook appealed the Foreclosure Action, which the Tenth Circuit affirmed. *See LNV Corp. v. Hook*, 807 F. App'x 893 (10th Cir. 2020). Appellant Hook's Petition for Writ of Certiorari was denied on December 7,

---

[18] B. Ct., Dkt. No. 72; Adv. Proceeding, Dkt. Nos. 2, 10, 11, 12; ECF No. 21.

2020. *Hook v. United States*, 141 S. Ct. 939, 208 L. Ed. 2d 477 (2020). Appellant Hook also appealed the Foreclosure Order, which the Tenth Circuit just affirmed. *LNV Corp. v. Hook,* -- F. App'x -- , 2021 WL 1343674 (10th Cir. Apr. 12, 2021). At issue now is Appellants' Bankruptcy Appeal. The Court also raises and addresses, *sua sponte*, whether any of the issues are moot in light of subsequent events in the Foreclosure Action. *1mage Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) ("Federal courts have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party, and thus a court may *sua sponte* raise the question of whether there is subject matter jurisdiction at any stage in the litigation." (internal quotation marks and citation omitted)); *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010) (federal courts "have no subject-matter jurisdiction if a case is moot").

## II.   LEGAL STANDARD

### A.  Pro Se Attorneys

Appellants appear pro se, but they are attorneys. Therefore, their filings are not afforded the liberal construction ordinarily given to pro se litigants. *See Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001); *see also Hook v. United States,* 624 F. App'x 972, 976 (10th Cir. 2015) ("Because Ms. Hook is an attorney proceeding pro se, we do not afford her filings the liberal construction ordinarily given to pro se pleadings.").

### B.  Review of Bankruptcy Appeals

In reviewing a bankruptcy court's decision, the district court functions as an appellate court and is authorized to affirm, reverse, modify, or remand the bankruptcy court's ruling. *See* 28 U.S.C. § 158(a); Fed. R. Bankr. P. 8005. "A bankruptcy court's legal conclusions are reviewed de novo, while its factual findings are reviewed for clear error." *In re Long*, 843 F.3d

871, 873 (10th Cir. 2016) (quotation marks and citation omitted).

## III.    DISCUSSION

Appellants argue the issues are whether the Bankruptcy Court abused its discretion, committed reversible error, and/or violated the due process clause under the Fifth Amendment in the various orders at issue. In addition, Appellants argue such orders created the appearance of judicial bias. The Court, however, starts with mootness. Then, the Court moves on to alleged violations of due process and judicial bias which Appellants raise as to all Appealed Orders. Finally, the Court examines each order complained of.

### A.  Mootness

Article III of the Constitution limits federal jurisdiction to "[c]ases" or "[c]ontroversies." U.S. Const. art. III, § 2, cl. 1. The doctrine of mootness is an aspect of Article III's case or controversy requirement. "At all stages of litigation, a plaintiff must maintain a personal interest in the dispute. The doctrine of standing generally assesses whether that interest exists at the outset, while the doctrine of mootness considers whether it exists throughout the proceedings.…And if in the course of litigation a court finds that it can no longer provide a plaintiff with any effectual relief, the case generally is moot." *Uzuegbunam v. Preczewski*, -- U.S. -- , 141 S. Ct. 792, 796 (2021). If a party no longer suffers from a redressable injury, federal courts no longer have jurisdiction. *United States v. Salazar*, 987 F.3d 1248, 1251 (10th Cir. 2021).[19] In other words, "the mootness question turns on what relief is available to [Appellants] if [they] were to prevail in this appeal." *In re C.W. Min. Co.*, 740 F.3d 548, 564 (10th Cir. 2014) (quotation marks, alteration, and citation omitted).

---

[19] There are some exceptions to mootness, but none apply here. *Hendrickson v. AFSCME Council 18*, No. 20-2018, -- F.3d --,  2021 WL 1152656, at *5 (10th Cir. Mar. 26, 2021) (exceptions to mootness include conduct capable of repetition yet evading review, voluntary cessation, and transitory claims).

At bottom, Appellants seek to have their bankruptcy case reopened so the Trustee could "fully administer the assets of the estate," which means, for example, filing adversary proceedings to recover the alleged sums owed from the United States (IRS) or to challenge LNV's ability to foreclose on the Denver Property. But, even if the Court were to reverse the Bankruptcy Court's orders relating to the closure of the bankruptcy case, no effective relief may be had. First, Appellants have already filed adversary proceedings on those claims which they contend the Trustee should have pursued. Second, and importantly, issues concerning the two main "assets" Appellants claim – monies or refunds owed from the United States and the Denver Property – have already been resolved against Appellants. After LNV obtained relief from the automatic stay, this Court, in the Foreclosure Action, determined the interests of the United States and others in the Denver Property and ordered the Denver Property be judicially foreclosed. The Denver Property has now been sold. Appellant Hook has appealed the Foreclosure Action orders which the Tenth Circuit has *affirmed*.[20]  In other words, there would be no claims for the Trustee to pursue. Accordingly, the Court finds Appellants' appeal of the bankruptcy case closure orders are moot.

Even assuming Appellants' appeal of the closure orders is not moot, they fail to show any of the Appealed Orders should be reversed.

### B.  Judicial Bias and Violation of Due Process

Appellants repeatedly – and cursorily – argue the Bankruptcy Court's adverse orders show judicial bias and a violation of their due process rights. "'To demonstrate a violation of due process because of judicial bias, a claimant must show either actual bias or an appearance of bias.'" *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) (quoting *United States v. Nickl*, 427

---

[20] Appellant Smith did not appeal and the time for him to do so has long expired.

F.3d 1286, 1298 (10th Cir. 2005)). And "adverse rulings alone do not demonstrate judicial bias, meaning that an argument relying solely on the district court's adverse rulings is devoid of merit." *LNV Corp. v. Hook,* 2021 WL 1343674, at *1 (brackets and quotation marks omitted) (quoting *LNV Corp. v. Hook*, 807 F. App'x at 895). *See also Bixler*, 596 F.3d at 762 (same). Accordingly, Appellants' arguments against the Bankruptcy Court based on alleged judicial bias in violation of the Fifth Amendment due process right to a fair and impartial decision-maker is without merit.[21]

Appellants make the same argument against this Court – the undersigned – in their reply brief. They contend this Court's rulings and orders create an appearance of "extreme" judicial hostility and bias. This argument is rejected for the same reason that it is rejected as to the Bankruptcy Court: adverse rulings and orders alone do not establish judicial bias in violation of the due process clause of the Fifth Amendment.

### C.  Evidentiary Hearings and Violation of Due Process

Appellants' briefs are riddled with statements that evidentiary hearings were not held by the Bankruptcy Court. To the extent Appellants contend that their due process rights were violated because no evidentiary hearing was held before the closure orders were issued, such contention is without merit. First, during the August 2, 2018, hearing, Appellant Smith stated he did not suggest an evidentiary hearing was required and Appellant Hook did not state otherwise.[22] Indeed, no party requested an evidentiary hearing. Further, Appellants fail to explain how they were prejudiced by the lack of any hearing before any order was issued. As the Tenth Circuit has previously advised Appellant Hook, "[a]bsent any argument regarding prejudice, her

---

[21] Appellants' argument of judicial bias relies on not only the adverse decisions appealed but also a number of other adverse decisions issued by the Bankruptcy Court. (*See* ECF No. 23, pp. 40-41, n. 2.)

[22] *See* ECF No. 23-1, p. 72 at 11. 3-6.

due-process argument is meritless." *In re Hook*, 816 F. App'x at 271 (citing *Miller v. Fed. Bureau of Prisons*, 989 F.2d 420, 423 (10th Cir. 1993)). Appellants' argument here is similarly without merit.

### D.  The Minute Order – Standing

The Minute Order, which memorialized the Bankruptcy Court's oral ruling, found Appellants lacked standing to object. In the bankruptcy context, the Tenth Circuit applies a prudential standing requirement that "'is more stringent than the case or controversy standing requirement of Article III." *Parr v. Rodriguez (In re Parr)*, 732 F. App'x 714, 716 (10th Cir. 2018) (ellipsis omitted) (quoting *C.W. Mining Co. v. Aquila, Inc. ( In re C.W. Mining Co. )*, 636 F.3d 1257, 1260 n.5 (10th Cir. 2011)). To have standing to object to a bankruptcy court order, the party must be an "aggrieved person." *In re Parr,* 732 F. App'x at 716. To qualify as a person aggrieved, the party "must have a pecuniary interest in the outcome of the bankruptcy proceedings." *In re Morreale*, No. BR 13-27310 TBM, 2015 WL 3897796, at *7 (Bankr. D. Colo. June 22, 2015) (quotation marks and citation omitted). *See also In re Parr*, 732 F. App'x at 716 (same). As relevant here, a debtor does not qualify as a person aggrieved "unless the estate is solvent and excess will eventually go to the debtor." *In re Parr*, 732 F. App'x at 716. In other words, the debtor must show a "'reasonable probability of a surplus.'" *In re Morreale*, 2015 WL 3897796, at *8.

The Bankruptcy Court found Appellants' estate was insolvent. Specifically, the Bankruptcy Court found that, even if it accepted Appellants' argument that only $12,380.23 of the approximately $2.4 Million in claims filed against the estate are valid, the estate is nonetheless insolvent. To wit, there would be $12,380.23 in claims but the estate only had $1,013.99. The Bankruptcy Court also found that Appellants wanted the Trustee to pursue claims

on behalf of the estate against the IRS and LNV but the Trustee exercised his business judgment not to do so. And the Bankruptcy Court found Appellants failed to show the Bankruptcy Court could force the Trustee to do so. Thus, the Trustee abandoned such assets to Appellants to do as they saw fit.

Appellants do not challenge the Bankruptcy Court's findings that, at best, at that time, there would be $12,380.23 in claims but the estate only had $1,013.99. Instead, Appellants argue the estate was not "hopelessly insolvent" because there was a reasonable probably of a surplus *if* the Trustee were to file adversary proceedings and the like to administer the estate's assets, e.g., file adversary proceedings against the IRS and LNV. In other words, *if* the Trustee pursued – or were forced to pursue – the IRS and LNV, Appellants' estate would not be insolvent.

The Trustee counters that he was not required to liquidate every asset or prosecute every cause of action and may exercise business judgment to determine that a cause of action was not worth pursuing and abandon the property to the debtor. The Bankruptcy Court agreed; this Court does so as well. *See In re Consol. Indus. Corp.*, 330 B.R. 712, 715 (Bankr. N.D. Ind. 2005) (A trustee is not required to prosecute every cause of action. Instead, "a trustee is given a substantial degree of discretion in deciding how best to administer the estate committed to his care and his actions are measured by a business judgment standard."). Appellants' conclusory arguments that the Trustee should have pursued such actions – especially in light of the then pending Foreclosure Action – do not establish the Trustee abused his discretion or otherwise failed to properly exercise his business judgment. Accordingly, Appellants fail to show the Bankruptcy Court erred in finding the estate was insolvent or hopeless insolvent and, therefore, that

Appellants lacked standing to object.[23, 24]

### E.  The Closure Order

Appellants' arguments here are cursory at best, consisting of three sentences without analysis. As such, they are waived. *In re C.W. Mining Co.*, 740 F.3d 548, 564 (10th Cir. 2014) ("Arguments raised in a perfunctory manner, such as in a footnote, are waived." (internal quotation marks, brackets, and citation omitted)). Even if not waived, Appellants' arguments are rejected for the reasons stated above. Namely, Appellants fail to show why an evidentiary hearing was required or how they were prejudiced; fail to show which findings and conclusions of the Trustee's Initial Report (or Second Report) were allegedly "unsubstantiated" and how this supports any relief; and fail to show judicial bias by their mere disagreement with the order.

### F.  The Post-Closure Order Denying the Motion to Vacate and Motion to Stay

Appellants claim because the Bankruptcy Court violated their due process rights under the Fifth Amendment in issuing the Closure Order, the Closure Order was void. Therefore, according to Appellants, the Bankruptcy Court erred in not granting the Motion to Vacate. But the Court finds there have been no violations of Appellants' due process rights. Thus, it follows that Appellants' reliance on such alleged violations is unavailing and provides no grounds for relief. Concomitantly, the Bankruptcy Court did not err in denying the Motion to Stay.

### G.  The CDOR Dismissal Order

Appellants raise four arguments in support of their appeal of the February 5, 2019 order granting CDOR's Motion to Dismiss. The Court discusses – and rejects – them below.

First, Appellants contend that their complaint against CDOR does not fail to state a claim

---

[23] The Trustee also asserts that, where the property is abandoned to the debtor, the debtor has no standing to object, regardless of whether the estate is or is not insolvent. In light of the Court's determination, it need not reach this issue.

[24] To the extent Appellants' arguments here apply to the Notice, they are rejected for the same reasons.

and refer the Court to their response brief filed before the Bankruptcy Court for their rationale. The Court, however, declines to search Appellants' response brief to find what rationale supports rejection of the Bankruptcy Court's decision. It is up to Appellants to set forth how and where the Bankruptcy Court erred. Thus, this argument is waived. *See Gaines-Tabb v. ICI Explosives, USA, Inc.*, 160 F.3d 613, 623-24 (10th Cir. 1998).

Next, Appellants "deny" their claims are implausible, without making any showing of why they are plausible or how the Bankruptcy Court erred in its decision. The Court will not construct arguments or theories for them. *See Shero v. City of Grove, Okl.*, 510 F.3d 1196, 1207 (10th Cir. 2007) (court will not fashion argument for party).

Third, Appellants argue the Bankruptcy Court should have allowed them leave to amend. But Appellants fail to argue – or show – they sought leave to amend and it is unknown whether any proposed amendment would not be futile. *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007) ("A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." (quotation marks and citation omitted)). And Appellants provide no authority which requires a court to *sua sponte* allow attorneys leave to amend.

Finally, Appellants argue the Bankruptcy Court's granting of the Motion to Dismiss without holding a jury trial created an appearance of judicial bias and resulted in harm. However, it has long been held that the Seventh Amendment is not violated by the dismissal of a complaint on legal grounds "because such rulings mean that no triable issue exists to be submitted to a jury." *Smith v. Kitchen*, 156 F.3d 1025, 1029 (10th Cir. 1997). Here, because Appellants fail to show their claims were not properly dismissed on legal grounds, they were not deprived of any constitutional right to a jury trial. *Overton v. United States*, No. 99-2069, 2000 WL 14274, at *4, 202 F.3d 282 (10th Cir. 2000) (unpublished table decision). Therefore, the granting of a motion

to dismiss without a jury trial does not support an appearance of judicial bias.

As a final matter, the Bankruptcy Court also dismissed Appellants' claims because it found they were moot. Appellants fail to challenge that basis for dismissal in their opening brief. Thus, the Bankruptcy Court's order may also be affirmed for that reason.

**H.  Relief**

In their "conclusion" and reply brief, Appellants make several requests – all of which are rejected.

First, Appellants request the reversal of the Bankruptcy Court's orders appealed. The Court, however, finds they are to be affirmed.

Next, Appellants request a withdrawal of the reference of their entire bankruptcy case and "all related adversary proceedings" to an Article III judge. Appellants' bankruptcy case, however, is closed. The Court has withdrawn two adversary proceedings involving parties to the Foreclosure Action, and those proceedings are resolved concurrently with this appeal. As to any other proceedings, Appellants fail to identify them or to show they should be withdrawn. Accordingly, this request is denied.

Third, Appellants request Judge Blackburn to vacate and set aside final judgments and orders entered in the Foreclosure Action. But, Judge Blackburn is not the presiding judge in this Bankruptcy Appeal. Moreover, Appellants' request is frivolous as their appeal of the Bankruptcy Court's orders can in no way serve to support vacating orders from the Foreclosure Action.

Finally, Appellants request the Court to issue sanctions against the Trustee, CDOR, and CDOR's attorney. The Court's review of the filings shows no basis to issue any sanctions against them.

IV.     **CONCLUSION**

Based on the foregoing, it is **ORDERED**

(1) That the Bankruptcy Orders at issue (ECF Nos. 1, 11, 12, 21, and 22) are

     **AFFIRMED**;

(2) That all requests for relief by Appellants are **DENIED**;

(3) That the Clerk shall enter judgment in favor of Defendants; and

(4) That the Clerk shall close this case.

DATED this 27th day of April, 2021.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge